PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1744
_____

HADDRICK BYRD,
                              Appellant

v.

ROBERT SHANNON, Superintendent SCI-Frackville;
V. STANISHEFSKI, Corrections Health
Care Administrator SCI-Frackville;
JACK ROBINSON, Supervising Nurse SCI-Frackville;
H. SPENCER, Nurse SCI-Frackville;
DORINA VARNER,
Chief Grievance Officer, Camp Hill, PA
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-09-cv-01551)
District Judge:  Honorable Sylvia H. Rambo
_____

Argued October 3, 2012
Before:  FUENTES, FISHER and COWEN, *Circuit Judges*.

(Filed: March 11, 2013)

Haddrick Byrd
Frackville SCI
1111 Altamont Boulevard
Frackville, PA  17931
     *Pro Se Appellant*

Richard H. Frankel, Esq.
Drexel University
Earle Mack School of Law
3320 Market Street
Philadelphia, PA  19104

Alexandra Scanlon (ARGUED)
Drexel University
Earle Mack School of Law
L324
3320 Market Street
Philadelphia, PA 19104

Rebecca Trela (ARGUED)
Drexel University
Earle Mack School of Law
L324
3320 Market Street
Philadelphia, PA 19104
     *Amicus Appellant / Court*
     *Appointed Amicus Curiae*

Raymond W. Dorian, Esq. (ARGUED)
Pennsylvania Department of Corrections
Office of Chief Counsel
1920 Technology Parkway
Mechanicsburg, PA  17050
        *Counsel for Appellees*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

Haddrick Byrd, a prisoner at SCI-Frackville, filed a pro se complaint under 42 U.S.C. § 1983 in the Middle District of Pennsylvania alleging that various Pennsylvania Department of Corrections ("DOC") employees violated his Eighth Amendment rights and were negligent under state law. Byrd appeals the District Court's order granting summary judgment to DOC employees V. Stanishefski, Jack Robinson, and H. Spencer, and the District Court's refusal to reconsider its order granting a motion to dismiss for DOC employees Robert Shannon and Dorina Varner.  Instead of paying a docketing fee on appeal, Byrd filed a motion to proceed *in forma pauperis* ("IFP").  For the reasons set forth below, we will deny Byrd's request to proceed IFP.

I.

At all times material to this appeal, Byrd was an inmate at SCI-Frackville.  Byrd's pro se complaint of August

3

13, 2009 named the following defendants: (1) Robert Shannon, the Superintendent of SCI-Frackville; (2) V. Stanishefski, the Corrections Health Care Administrator at SCI-Frackville; (3) Jack Robinson, the Supervising Nurse at SCI-Frackville; (4) H. Spencer, a nurse at SCI-Frackville; and (5) Dorina Varner, the Chief Grievance Officer for the DOC. Byrd specifically alleges that these DOC employees showed deliberate indifference to his serious medical needs by failing to provide him with prescription eye drops for his glaucoma, thus depriving him of his Eighth Amendment rights and committing negligence under state law.

Byrd proceeded IFP in the District Court after his application to do so was granted on September 9, 2009. The District Court, on February 22, 2010, granted defendants' motion to dismiss in part, dismissing Shannon and Varner. On February 28, 2011, the District Court granted the remaining defendants' motion for summary judgment.

On April 5, 2011, Byrd filed a motion to proceed IFP on appeal. That same day, the Clerk's Office notified Byrd that he had "three strikes" under 28 U.S.C. § 1915(g) and had to file a motion showing that he was in imminent danger of serious physical injury in order to be eligible for IFP status. Byrd's three potential strikes included two cases that were clearly dismissed for failure to state a claim: (1) *Byrd v. Parris*, No. 99-cv-00769 (E.D. Pa. Oct. 15, 1999) and (2) *Byrd v. City of Philadelphia*, No. 06-cv-01957 (E.D. Pa. Aug. 10, 2006). The other potential strike, *Byrd v. Gillis*, C.A. No. 01-3868 (3d Cir. July 30, 2002), was an appeal that was dismissed by this Court under 28 U.S.C. § 1915(e)(2)(B) because it was "without merit." In response to the

notification by the Clerk's Office, Byrd did not file a motion alleging imminent danger; instead, he submitted a response on April 19, 2011, arguing that the Clerk's Office made a mistake in determining that he had three strikes. Byrd noted that, although he brought two prior actions that were dismissed for failure to state a claim, he did not proceed IFP in those actions.

In the January 12, 2012 order appointing *amicus curiae*, this Court instructed *amicus* to address whether dismissals of non-IFP actions and appeals can count as strikes under § 1915(g), or whether only IFP actions and appeals can count as strikes. The Court also stated that "*[a]micus* counsel may wish to address the relevance, if any, of the fact that 28 U.S.C. section 1915(e) and section 1915(g) use similar phrasing . . . that varies slightly from the language of Fed. R. Civ. P. 12(b)(6)."

On February 28, 2012, *amicus* requested to expand the scope of its appointment. Specifically, *amicus* sought leave to address whether this Court's dismissal of one of Byrd's previous cases, *Byrd v. Gillis*, C.A. No. 01-3868 (3d Cir. July 30, 2002), constituted a strike. On March 8, 2012, this Court granted in part and denied in part *amicus*'s motion to expand the scope of its representation. The Court permitted *amicus* to argue, with respect to *Byrd v. Gillis*, that "when an action is dismissed for a reason that is unclear, that dismissal does not count as a strike."

II.

5

We have jurisdiction of this matter as an appeal of a final decision in the District Court. 28 U.S.C. § 1291. The District Court did not address whether Byrd's eligibility for IFP status was foreclosed by the three strikes provision of 28 U.S.C. § 1915(g). We now address this issue as a matter of first impression.[1]

III.

A.

In order to determine Byrd's IFP eligibility, we must decide whether "strikes" under 28 U.S.C. § 1915(g) can be accrued in actions or appeals where the prisoner has prepaid the filing fee, or whether "strikes" can only be accrued in IFP actions or appeals. Section 1915(g), enacted as a part of the Prison Litigation Reform Act of 1996 ("PLRA"), states:

---

[1] Because we hold that Byrd is not entitled to IFP status due to the three strikes provision of 28 U.S.C. § 1915(g), and Byrd has not paid the docketing fee, we do not reach the merits of Byrd's appeal. *See Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1176 (10th Cir. 2011) ("The 'three strikes' provision of the [IFP] statute applicable to indigent prisoners requires so-called 'frequent filer' prisoners to prepay the entire filing fee before federal courts may consider their civil actions and appeals."). If Byrd pays the docketing fee within 14 days of the issuance of the order in this case, *see* 3d Cir. L.A.R. 3.3, L.A.R. Misc. 107.1, the appeal shall be returned to this panel for further consideration of the merits.

"In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

Three of our sister courts of appeals have held that strikes may be accrued in actions or appeals regardless of whether the prisoner has prepaid the filing fee or is proceeding IFP. *See Burghart v. Corr. Corp. of Am.*, 350 Fed. App'x 278, 279 (10th Cir. 2009)*; Hyland v. Clinton*, 3 Fed. App'x 478, 479 (6th Cir. 2001); *Duvall v. Miller*, 122

7

F.3d 489, 490 (7th Cir. 1997).  No court of appeals has held that strikes may only be accrued in IFP actions or appeals.[2]

This situation presents an issue of statutory interpretation.  Our task is to give effect to the will of Congress, and where Congress's will has been expressed in language that has a reasonably plain meaning, that language must ordinarily be regarded as conclusive.  *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993); *see also Caraco Pharm. Labs., LTD v. Novo Nordisk*, 132 S. Ct. 1670, 1680 (2012) ("We begin where all such inquiries must begin:  with the language of the statute itself.").  If the language of the statute has a reasonably plain meaning, then our sole function is to

---

[2] This Court, in appointing *amicus*, expressed its understanding that there was a circuit split on this issue because the U.S. Court of Appeals for the Tenth Circuit had implied that only IFP actions or appeals could be counted as strikes under § 1915(g).  *See Jennings v. Natrona Cnty. Det. Ctr. Med. Facility*, 15 F.3d 775, 780-81 (10th Cir. 1999) (listing only dismissals under § 1915(e)(2)(B), a provision that only applies to IFP actions or appeals, as the types of dismissals that count as strikes).  *Amicus*, in a commendable act of candor, brought to our attention the fact that the Tenth Circuit, in subsequent cases, rejected the argument that § 1915(g) strikes could only be accrued in IFP actions or appeals.  *See Hafed*, 635 F.3d at 1177 (holding that dismissals under § 1915A, a provision that is not limited to IFP actions or appeals, can count as strikes); *Burghart v. Corr. Corp. of Am.*, 350 Fed. App'x 278, 279 (10th Cir. 2009) (explicitly holding that non-IFP actions or appeals can count as strikes).

enforce the statute's language. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).

In determining whether the language of a particular statutory provision has a plain meaning, the language shall be considered in the context of the entire statute. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (stating that statutory interpretation focuses on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole"); *see also Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir. 2001) (en banc) (interpreting one particular section of the PLRA, 28 U.S.C. § 1915(g), in the context of the PLRA as a whole). The plain meaning of statutory language is not conclusive only when "the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters." *Ron Pair Enters.*, 489 U.S. at 242.

Statutory purpose and legislative history may be referenced only if the statutory language is without a plain meaning, i.e., if the statutory language is ambiguous. *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010). Statutory language is ambiguous only where it is "reasonably susceptible of different interpretations." *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Atchinson Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n.27 (1985)).

Here, the statutory language has a reasonably plain meaning – "an action or appeal" is not limited to an IFP action or appeal; rather, it refers to both IFP and non-IFP actions or appeals. The three strikes provision, § 1915(g), does not make an explicit exception for previous actions or

9

appeals where the prisoner was not granted IFP status. *See Burghart*, 350 Fed. App'x at 279 ("[Plaintiff] argues that Congress did not intend § 1915(g) to apply to prisoners who had not filed their earlier cases IFP. However, § 1915(g) makes no distinction."); *Hyland*, 3 Fed. App'x at 479 ("[Section] 1915(g) does not distinguish between prior *in forma pauperis* actions and prior actions in which the fee was paid."); *Duvall*, 122 F.3d at 490 ("[Section 1915(g)] does not say, 'brought an action or appeal in forma pauperis,' or 'brought an action or appeal under this section.'").

We acknowledge that this Court, in *Santana v. United States*, found the phrase "civil actions" in another part of the PLRA to "lack a plain meaning." 98 F.3d 752, 755 (3d Cir. 1996) (interpreting 28 U.S.C. § 1915(b) and holding that the filing fee requirements of the PLRA with regard to "civil actions" did not apply to IFP habeas corpus petitions and appeals). This Court's analysis in *Santana*, however, focused on the unique nature of habeas corpus actions. *Id.* at 754. In contrast to habeas corpus actions, standard non-IFP actions are not, "in effect, hybrid actions whose nature is not adequately captured by the phrase 'civil action.'" *Id.* Thus, *Santana* does not compel a conclusion that the phrase "an action or appeal" in § 1915(g) lacks a plain meaning.

The same can be said for *Grayson v. Mayview State Hospital*, wherein this Court stated that § 1915(e)(2)(B), which uses language that closely tracks the three strikes provision of § 1915(g), is limited to IFP actions or appeals. 293 F.3d 103, 109 n.10 (3d Cir. 2002) ("Although the language of § 1915(e)(2) does not expressly limit the provision's reach to *in forma pauperis* claims, we believe

10

Congress intended it to be so limited."). We do not find *Grayson* to be controlling. First, the finding in *Grayson* – that § 1915(e)(2) applies only to IFP actions or appeals – is dicta; it was not necessary to the Court's holding, which was that the district court was required to grant leave to amend before dismissing a pro se inmate's action for failure to state a claim. *Id.* at 114. Second, the *Grayson* Court based its finding in part on the fact that any alternative interpretation of § 1915(e)(2)(B) would render similar provisions of the PLRA superfluous. *Id.* at 109 n.10 (citing *Benson v. O'Brian*, 179 F.3d 1014, 1017 (6th Cir. 1999) ("[I]f all actions, whether pursued in forma pauperis or not, are to be screened by the district court pursuant to § 1915(e)(2), the specific prisoner complaint screening provision, § 1915A, would be rendered largely superfluous.")). In contrast to § 1915(e)(2)(B), if § 1915(g) were interpreted to encompass non-IFP actions and appeals, no other provision of the PLRA, including § 1915A, would be rendered superfluous.

Finally, we acknowledge *amicus*'s argument that the language difference between § 1915(g) and Rule 12(b)(6) of the Federal Rules of Civil Procedure is instructive as to the meaning of "an action or appeal." Section 1915(g), just like the IFP specific provision, § 1915(e)(2)(B), which was the focus of *Grayson*, refers to an action that "fails to state a claim upon which relief *may* be granted," while Rule 12(b)(6) refers to an action that "fails to state a claim upon which relief *can* be granted." *Amicus* argues that this contrast between "may" and "can" indicates that Congress used "may" in § 1915(g) as a signal to reference § 1915(e) dismissals, which occur only in IFP actions and appeals, as opposed to

11

Rule 12(b)(6) dismissals, which occur in both IFP and non-IFP actions.  Although this argument is of some persuasive effect, it does not render the phrase "an action or appeal" to be without a plain meaning.  The bottom line remains that Congress could have easily differentiated between IFP and non-IFP actions or appeals in the language of § 1915(g), but it did not.  It is more rational to suppose that if Congress intended to make an exception for non-IFP cases in § 1915(g), then it would have explicitly done so, rather than merely using the word "may" instead of "can."

Thus, strikes may be accrued in actions or appeals regardless of whether the prisoner has prepaid the filing fee or is proceeding IFP, and Byrd's previous non-IFP actions, which were dismissed for failure to state a claim, count as strikes for purposes of § 1915(g).  Because this literal application of the statute will not likely increase the incidence of frivolous suits from prisoners, it will not "produce a result demonstrably at odds with the intentions of the drafters." *Ron Pair Enters.*, 489 U.S. at 242.

B.

*Amicus*, in support of Byrd, argues that even if non-IFP actions and appeals can count as strikes, Byrd has only two strikes, rather than three, because this Court's dismissal of Byrd's appeal in *Byrd v. Gillis*, C.A. No. 01-3868 (3d Cir. July 30, 2002) under § 1915(e)(2)(B) does not constitute a strike.  We disagree.

In *Byrd v. Gillis*, Byrd brought suit in the Middle District of Pennsylvania against prison officials in their

12

individual and official capacities for failing to investigate a false misconduct report against him. No. 01-cv-0576, slip op. at 1 (M.D. Pa. Sept. 21, 2001). As a result of the misconduct report, Byrd was placed in the restrictive housing unit for 60 days. *Id.* at 5. Byrd alleged that he was "subjected to the denial of due process, equal protection under the law, denial of religious practices, retaliation, malfeasance, non-feasance, and misfeasance." *Id.* at 1. The Magistrate Judge[3] granted the defendants' motion for summary judgment and concluded that, except for Byrd's due process claim regarding his misconduct hearing, Byrd failed to exhaust his administrative remedies. *Id.* at 6-12. In regard to Byrd's due process claim, the Magistrate Judge held that Byrd's placement in the restricted housing unit did not implicate a protected liberty interest under *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). *Id.* at 14-16. Additionally, in regard to Byrd's official capacity claims, the Magistrate Judge concluded that the prison officials were immune from suit. *Id.* at 13-14. Byrd's state law claims were held to be barred under the Eleventh Amendment. *Id.*

On appeal, this Court held that the Magistrate Judge properly granted summary judgment. *Byrd v. Gillis*, C.A. No. 01-3868, slip op. at 4 (3d Cir. July 30, 2002). The Court explicitly agreed that Byrd failed to exhaust his administrative remedies, that the alleged conduct did not implicate a protected liberty interest, and that the Eleventh

---

[3] The parties consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Amendment barred Byrd's state law claims.[4]  *Id.* at 3-4.  The Court ultimately dismissed the entire appeal under § 1915(e)(2)(B) because it was "without merit."  *Id.* at 4.

Section 1915(e)(2)(B) provides:

> "[T]he court shall dismiss the case at any time if the court determines that – the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

The consideration of whether a dismissal under § 1915(e)(2)(B) should count as a strike under § 1915(g) sometimes requires an examination of the § 1915(e)(2)(B) dismissal.  This is because § 1915(e)(2)(B) includes a ground for dismissal – defendant's immunity from suit – that does not qualify as a strike under § 1915(g), which involves dismissals for actions or appeals that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted."

We decline to adopt a categorical rule that courts, in dismissing actions and appeals under § 1915(e)(2)(B), must precisely indicate that the action or appeal is "frivolous or

---

[4] The Court did not expressly indicate its agreement with the Magistrate Judge that the defendants were immune from suit with regard to Byrd's claims against them in their official capacities.

14

malicious" or "fails to state a claim on which relief may be granted" in order for the dismissal to count as a strike under § 1915(g). Instead, we adopt a position similar to that of the U.S. Court of Appeals for the Tenth Circuit and clarify that when a court dismisses an action or appeal under § 1915(e)(2)(B), without more specificity, our determination of whether the dismissal constitutes a strike is "not formalistic or mechanical; rather, we must consider the nature of the dismissal and . . . whether the dismissal fits within the

15

language of § 1915(g)."[5]  *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1178 (10th Cir. 2011).[6]

Our dissenting colleague emphasizes that strikes should not accrue for "mixed dismissals," i.e., those dismissals that are based in part on a § 1915(g) ground, and in part on other grounds.  We agree.  In applying this case-

[5] In adopting this position, we do not condone a reviewing court holding that a previous dismissal constitutes a strike under § 1915(g) merely because frivolousness is suspected or the phrase "without merit" was used in the dismissal.  Instead, a case-specific, non-mechanical examination of the dismissal – which could lead to a strike being accrued where the dismissing court did not precisely indicate that the action or appeal was frivolous, malicious, or failed to state a claim – is warranted only when the action or appeal was dismissed generally under a PLRA provision, such as § 1915(e)(2)(B), without more specificity, as was the case in *Byrd v. Gillis*.

[6] The *Hafed* case is instructive.  There, a district court ambiguously dismissed a prisoner's complaint under 28 U.S.C. § 1915A(b) without clearly indicating whether it was relying on § 1915A(b)(1) for frivolousness, or § 1915A(b)(2) for suing an immune defendant.  The Court of Appeals determined that even though the district court mentioned the defendant's immunity, "the immunity ground for dismissal was subsumed in frivolousness."  The Court thus counted the dismissal as a strike for purposes of § 1915(g).  *Hafed*, 635 F.3d at 1178.

16

specific, non-mechanical approach, we consider the nature of the § 1915(e)(2)(B) dismissal and determine whether the *entire* dismissal fits within the language of § 1915(g). *See Tolbert v. Stevenson*, 635 F.3d 646, 651-52 (4th Cir. 2011) ("[Section] 1915(g) requires that a prisoner's entire 'action or appeal' be dismissed on enumerated grounds in order to count as a strike").

In *Byrd v. Gillis*, in addition to affirming that Byrd failed to exhaust his administrative remedies and failed to identify a protected liberty interest, the Court agreed with the Magistrate Judge's conclusion that the Eleventh Amendment barred Byrd's state law claims. The Court, however, did not indicate that it was relying on § 1915(e)(2)(B)(iii) (concerning immunity) to dismiss any part of the appeal. Instead, in dismissing the appeal in its entirety, the Court stated generally that it was relying on § 1915(e)(2)(B) because the appeal was "without merit." Consequently, we must determine whether the dismissal of the appeal under § 1915(e)(2)(B) because it was "without merit" fits within the language of § 1915(g).

In making this determination, we reiterate that a dismissal under § 1915(e)(2)(B) occurs because the action or appeal (1) is frivolous or malicious; (2) fails to state a claim; or (3) seeks monetary damages from a defendant who is immune from suit. With regard to an appeal of summary judgment, such as in *Byrd v. Gillis*, the reason for a dismissal under § 1915(e)(2)(B) is necessarily limited to either the appeal's frivolous or malicious nature or the defendant's immunity from suit. For the following reasons, we believe that the Court's dismissal of Byrd's appeal under

17

§ 1915(e)(2)(B) because it was "without merit" is appropriately viewed as a dismissal for frivolousness, rather than as a dismissal for suing an immune defendant.

First, the Court dismissed the *entire* appeal as being "without merit," and a dismissal based on the appeal's frivolous nature addresses the *entire* appeal, whereas a dismissal based on the defendants' immunity addresses only some of Byrd's claims; namely, his state law claims and his claims against the defendants in their official capacities. Second, the phrase "without merit" and similar variations are often associated with the word "frivolous" in the context of § 1915. *See Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995) (finding that a prisoner's "claim based on an indisputably *meritless* legal theory may be dismissed as frivolous [under § 1915]") (emphasis added). This is true in other areas of our jurisprudence as well. For example, in regard to damages for frivolous appeals under Rule 38 of the Federal Rules of Appellate Procedure, we have held that "[a]n appeal is frivolous if it is wholly *without merit*." *Quiroga v. Hasbro, Inc.*, 943 F.2d 346, 347 (3d Cir. 1991) (emphasis added); *see also Hilmon Co. (V.I.) v. Hyatt Int'l*, 899 F.2d 250, 251 (3d Cir. 1990) ("In this circuit an appeal is considered frivolous when it is utterly *without merit*.") (emphasis added) (internal quotation marks omitted). Also, in interpreting the Federal Revenue Code, we have held that a civil penalty is warranted when "the taxpayer assert[s] a position that is frivolous, *i.e.*, *meritless*, from the perspective of the tax laws." *Kahn v. United States*, 753 F.2d 1208, 1214 (3d Cir. 1985) (emphasis added).

18

Therefore, this Court's dismissal of the appeal in *Byrd v. Gillis* under § 1915(e)(2)(B) because it was "without merit" constitutes a strike for purposes of § 1915(g). Byrd has three strikes and is ineligible for IFP status.

IV.

For the foregoing reasons, we will deny Byrd's request to proceed IFP in this appeal.[7]

---

[7] We express gratitude to the director and students of the Appellate Litigation Clinic at the Earle Mack School of Law at Drexel University for an excellent presentation of the issues as court-appointed *amicus curiae*.

FUENTES, *Circuit Judge*, concurring in part and dissenting in part:

As noted by the majority, under the "three strikes" provision of 28 U.S.C. § 1915(g), once a prisoner has, on three occasions, "brought an action or appeal . . . that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted," that prisoner is barred from bringing any further civil actions under the Prison Litigation Reform Act of 1996 ("PLRA"). 28 U.S.C. § 1915(g). In my view, the primary question in this appeal is whether an action that is not explicitly dismissed for being "frivolous, malicious, or fail[ing] to state a claim upon which relief may be granted" can count as a strike under § 1915(g). The majority holds that it can. I respectfully disagree.

At issue is our dismissal of Byrd's appeal in *Byrd v. Gillis*, which we dismissed as being "without merit . . . pursuant to 28 U.S.C. § 1915(e)(2)(B)." C.A. No. 01-3868, slip op. at 4 (3d Cir. July 30, 2002). I disagree with the majority that this dismissal counts as Byrd's second strike. Section 1915(e)(2)(B) of the PLRA provides that a court shall dismiss an action or appeal at any time if it "determines that – the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, while the first two prongs of § 1915(e)(2)(B) track the language of § 1915(g), the third prong – defendant's immunity from suit – is not a basis for a strike under § 1915(g).

In dismissing Byrd's appeal in *Gillis*, we did not specify which prong of § 1915(e)(2)(B) we relied on. However, as the majority notes, "[w]ith regard to an appeal of summary judgment, such as in *Byrd v. Gillis*, the reason for a dismissal under § 1915(e)(2)(B) is necessarily limited to either the appeal's frivolous or malicious nature or the defendant's immunity from suit." Majority Op. at 17. It is undisputed that the *Gillis* court found that Byrd's state law claims were foreclosed by the Eleventh Amendment because the prison officials involved were immune from suit. Furthermore, while it ultimately determined that Byrd's appeal lacked merit, the *Gillis* court made no explicit finding that the claims foreclosed by immunity were "frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted."

As the Seventh Circuit has noted, "we cannot read into [a court's] decision a ground for dismissal that [it] did not state, and which would also substantially limit [the prisoner's] ability to file a lawsuit." *Haury v. Lemmon*, 656 F.3d 521, 523 (7th Cir. 2011). Because the dismissal in *Gillis* was not explicitly and entirely based on grounds covered by § 1915(g), I would hold that the 2002 dismissal in *Gillis* does not qualify as a strike. Accordingly, I respectfully dissent with respect to Part III.B of the majority opinion.

The weight of circuit authority indicates that "mixed dismissals" – those based in part on a § 1915(g) strike ground, and in part on other grounds – do not count as strikes.[1] In *Thompson v. Drug Enforcement Administration*,

---

[1] *See Tolbert v. Stevenson*, 635 F.3d 646, 647, 651-52 (4th Cir. 2011); *Haury v. Lemmon*, 656 F.3d 521, 523 (7th Cir.

the D.C. Circuit held that "actions containing at least one claim falling within none of the three strike categories . . . do not count as strikes." 492 F.3d 428, 432 (D.C. Cir. 2007). The *Thompson* court reasoned that "[s]ection 1915(g) speaks of dismissal of 'actions and appeals,' not 'claims.'" *Id.* Furthermore, in *Tolbert v. Stevenson*, 635 F.3d 646 (4th Cir. 2011), the Fourth Circuit concluded that, "consistent with the view of the majority of circuits to consider the issue, [] the plain language of § 1915(g) applies only to actions dismissed *entirely* as frivolous, malicious, or for failing to state a claim." *Id.* at 647 (emphasis in original). *See also Haury*, 656 F.3d at 523 ("Because the district court . . . did not dismiss the entirety of [the prisoner's] earlier case for one of the three bases listed in § 1915(g), the district court erred in part on grounds of immunity."). In light of this authority, I would agree with the view that, to count as a strike, a dismissal must rest entirely on grounds set forth in § 1915(g).

---

2011); *Thompson v. Drug Enforcement Admin.*, 492 F.3d 428, 432, 440 (D.C. Cir. 2007); *see also Mayfield v. Texas Dep't of Criminal Justice*, 529 F.3d 599, 617 (5th Cir. 2008) (finding that prisoner did not incur a strike because some of his claims should have survived through the summary judgment stage); *Powells v. Minnehaha Cnty. Sheriff Dep't*, 198 F.3d 711, 713 (8th Cir.1999) ("The reversal as to some of Powells's claims in No. 98-4160 eliminates one of the 'three strikes' that was the basis for the District Court's dismissal of the two later-filed cases."). *But see Pointer v. Wilkinson*, 502 F.3d 369, 376 (6th Cir.2007) ("[W]here an entire complaint is dismissed, in part for failure to exhaust and in part for one of the grounds stated in § 1915(g), the dismissal should count as a strike.").

3

A dismissal based in part on grounds not stated in § 1915(g) should not count as a strike.

The majority agrees with this assessment, *see* Majority Op. at 16, and acknowledges that the *Gillis* court did not specify which prong of § 1915(e)(2)(B) it relied on in dismissing Byrd's suit, *id.* at 17. However, it

> decline[s] to adopt a categorical rule that courts, in dismissing actions and appeals under § 1915(e)(2)(B), must precisely indicate that the action or appeal is "frivolous or malicious" or "fails to state a claim on which relief may be granted" in order for the dismissal to count as a strike under § 1915(g).

*Id.* at 14-15. Instead, it adopts a position similar to that of the Tenth Circuit in *Hafed v. Federal Bureau of Prisons*, and holds that,

> when a court dismisses an action or appeal under § 1915(e)(2)(B), without more specificity, our determination of whether the dismissal constitutes a strike is "not formalistic or mechanical; rather, we must consider the nature of the dismissal and . . . whether the dismissal fits within the language of § 1915(g)."

*Id.* at 15-16 (quoting *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1178 (10th Cir. 2011)).

Applying this holding, the majority concludes that *Gillis* does not constitute a "mixed dismissal" (in part of

4

grounds of immunity), but "is appropriately viewed as a dismissal for frivolousness, rather than as a dismissal for suing an immune defendant." *Id.* at 18. In arriving at this determination the majority reasons that,

> the [*Gillis*] Court dismissed the *entire* appeal as being "without merit," and a dismissal based on the appeal's frivolous nature addresses the *entire* appeal, whereas a dismissal based on the defendants' immunity addresses only some of Byrd's claims; namely, his state law claims and his claims against the defendants in their official capacities.

*Id.* (emphasis in original). The majority appears to be operating under the assumption that, because the *Gillis* court dismissed Byrd's *entire* appeal under § 1915(e)(2)(B), it must have dismissed each of the claims brought on appeal under the *same prong* of § 1915(e)(2)(B). This is not necessarily so.

Indeed, it is entirely possible that, in dismissing the appeal as "without merit" under § 1915(e)(2)(B), the *Gillis* court intended to dismiss Byrd's state law claims under § 1915(e)(2)(B)(iii) as foreclosed by immunity, and the rest of his claims under § 1915(e)(2)(B)(i) as frivolous. The majority's reliance on the fact that the *Gillis* court "did not indicate that it was relying on § 1915(e)(2)(B)(iii) (concerning immunity) to dismiss any part of the appeal," *id.* at 17, provides little evidence for its position. The *Gillis* court *also* did not indicate that it was relying on § 1915(e)(2)(B)(i) (concerning frivolousness) in dismissing the suit, which it could have – and presumably would have – if it meant to dismiss the entire suit as frivolous. Instead, it

5

dismissed the appeal as "without merit" under § 1915(e)(2)(B), which encompasses dismissal on both frivolousness grounds *and* immunity grounds.

In recasting the dismissal in *Gillis* as one for frivolousness so that it will fit within the language of § 1915(g), the majority contends that "the phrase 'without merit'" is "often associated with the word 'frivolous' in the context of § 1915(g)" as well as "in other areas of our jurisprudence." *Id.* at 18. In my view, the majority incorrectly equates the words "without merit" with the term "frivolous."[2] While it is true that a "frivolous" action lacks merit, it does not follow that an action that is "without merit"

---

[2] Notably, in each of the cases cited by the majority in support of its position, the words "without merit" and similar variations are preceded by a modifier, indicating that lack of merit alone does not make an action "frivolous." *See Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995) ("a claim based on an *indisputably* meritless legal theory may be dismissed as frivolous under [§ 1915]") (emphasis added); *Quiroga v. Hasbro, Inc.*, 943 F.2d 346, 347 (3d Cir. 1991) ("An appeal is frivolous if it is *wholly* without merit.") (emphasis added) (citation omitted); *Hilmon Co. (V.I.), Inc. v. Hyatt Int'l*, 899 F.2d 250, 251 (3d Cir. 1990) ("In this circuit an appeal is considered frivolous when it is *utterly* without merit.") (emphasis added) (internal quotation marks omitted); *Kahn v. United States*, 753 F.2d 1208, 1214 (3d Cir. 1985) ("the government argues that Emily Kahn's claim for a 'war tax refusal' credit was *wholly* without legal foundation and therefore 'frivolous' within the meaning of section 6702(a)(2)(A)" of the Internal Revenue Code) (emphasis added). No such modifier was used in the *Gillis* opinion.

6

is necessarily "frivolous." *See, e.g.*, *McCarthy v. Mayo*, 827 F.2d 1310, 1318 (9th Cir. 1987) ("An appeal is frivolous when the result is obvious and the arguments on appeal wholly lack merit. An appeal that lacks merit is not necessarily frivolous." (citation omitted)). Indeed, courts routinely use the words "without merit" to refer to arguments advanced by litigants without meaning to say that the argument is frivolous. The Supreme Court stressed this distinction in *Anders v. California*, in which it found that a California court's determination that a petitioner's appeal had "no merit" explicitly *did not* constitute a "finding of frivolity." *Anders*, 386 U.S. 738, 743 (1967); *see id.* ("[The court] failed . . . to say whether [Charles Anders' appeal] was frivolous or not, but . . . simply found the petition to be 'without merit.'"). *See also Martin v. Knox*, 502 U.S. 999, 999 (1991) (noting the distinction between "petitions that are frivolous and those that are merely meritless") (Stevens, J. joined by Blackmun, J.) *denying cert. to* 945 F.2d 395 (Table) (3d Cir. 1991). Thus, courts have drawn a clear legal distinction between these terms that is acutely relevant in this case.

In any event, the fact that a panel of our Court is divided as to the meaning of the *Gillis* court's dismissal indicates the problem with treating it as a strike. Indeed, it is precisely this sort of uncertainty over the meaning of a prior court's dismissal of an action or appeal that we should seek to avoid. The majority's holding will require reviewing courts to weed through prior opinions to determine the precise grounds for a dismissal, and to analyze the decision and possibly even the pleadings from the underlying case in an effort to divine what the original court's intention may have

7

been.  Furthermore, it will invite parties to relitigate the issues in those prior cases, arguing their level of merit.

I believe that a more appropriate course would be to conclude that, in order for a dismissal to be counted as a strike, the decision must explicitly state that the action or appeal was dismissed entirely for grounds covered by § 1915(g).  This approach is supported by the D.C. Circuit's reasoning in *Thompson*.  There, the court faced the issue of whether to treat a dismissal as a strike where no grounds were given for the dismissal.  After "weighing considerations of fairness, convenience, and probability," the court held that the party challenging the *in forma pauperis* ("IFP") motion bears the burden of producing evidence capable of convincing the court that a prior action or appeal was dismissed on one of § 1915(g)'s enumerated grounds.  *Id.* at 435  In so doing, the court reasoned that:

> Courts and government agencies have both the incentive and experience to ensure that strikes are identified as such at the time of dismissal. Counting unexplained dismissals as non-strikes greatly increases the chance that courts will, where appropriate, take the relatively easy step of making clear that dismissals rest on section 1915(g) grounds, if not to preserve their own resources, then because government defendants will remind them to do so.

*Id.* at 435; *see also Snider v. Melindez*, 199 F.3d 108, 115 (2d Cir. 1999) (stating in dicta that, for the sake of efficiency, a district court's "judgment should clearly state the reasons for the dismissal, including whether the dismissal is because the

claim is 'frivolous,' 'malicious,' or 'fails to state a claim,' . . . or for other reasons"). The Seventh Circuit reached a similar conclusion in *Haury*, in which it held that the district court's dismissal for lack of jurisdiction did not qualify as a strike, even if the district court may have also considered the action frivolous. As noted earlier in this dissent, the *Haury* court concluded, "we cannot read into [the court's] decision a ground for dismissal that [it] did not state, and which would also substantially limit [the prisoner's] ability to file a lawsuit." *Haury*, 656 F.3d at 523.

Requiring that an action or appeal be explicitly dismissed on grounds covered by § 1915(g) in order to count as a strike has the added benefit of clearly informing prisoners of their IFP status, a benefit that has been acknowledged by our sister circuits. *See, e.g.*, *Paul v. Marberry*, 658 F.3d 702, 706 (7th Cir. 2011) ("[C]lassifying a dismissal as a strike depends on the grounds given for it; since most prisoners litigate their civil claims pro se, they should not be required to speculate on the grounds the judge could have or even should have based the dismissal on."). Furthermore, this holding is in accordance with the "driving purpose of the PLRA [which] is to preserve the resources of both the courts and the defendants in prisoner litigation." *Thompson*, 492 F.3d at 438. That "purpose is best accomplished by a bright-line rule that avoids the need to relitigate past cases." *Id.*

9

Accordingly, I respectfully dissent with respect to Part III.B of the majority opinion.[3]

---

[3] I do not disagree with Part III.A of the majority opinion, which holds that a strike may be accrued in actions or appeals regardless of whether the prisoner proceeded IFP or not.